UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Charles Van Blarcom

   v.                                             Civil No. 10-cv-313-JD
                                                  Opinion No. 2011 DNH 082

Michael Astrue, Commissioner
of Social Security


O R D E R

Charles Van Blarcom seeks judicial review, pursuant to 42 U.S.C. 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for social security benefits under Title II and Title XVI. Van Blarcom challenges the residual functional capacity assessment made by the Administrative Law Judge ("ALJ") and contends that the ALJ's determination that he can return to his past relevant work is not supported by substantial evidence. The Commissioner moves to affirm the decision.


Background

As is pertinent to this appeal, Charles Van Blarcom applied for social security benefits under Title II and supplemental security income benefits under Title XVI on January 30, 2006. Because of a subsequent application, Van Blarcom seeks benefits

for a closed period from November 1, 1997, to December 20, 2007. His last insured date was September 30, 1999.

In his application for benefits, Van Blarcom alleged a disability caused by depression, chronic left arm atrophy, chronic lower back strain, and hypertension. He completed the tenth grade in high school. Van Blarcom worked as a gas station attendant in 1995 and 1996.

Van Blarcom described his job as a gas station attendant to involve supervisory duties, preparation of written reports, operation of fuel pumps and other tools and equipment, and frequent to constant reaching. He said that the lifting and carrying requirements for the job were about ten to twenty pounds. He also said that he stopped working at that job because he was constantly sore and that it was hard on his feet.

In June of 1999, Dr. Urban, a primary care physician, diagnosed Van Blarcom with major depression with suicidal ideation. He also noted that the diagnosis was complicated by substance abuse. Van Blarcom explained that he had had a three-month history of depression after breaking up with his girl friend. Dr. Urban gave him medication samples and recommended counseling.

In June of 2001, Dr. Urban saw Van Blarcom for right shoulder pain and diagnosed muscle strain from over use. In June

of 2005, Van Blarcom was treated in a hospital emergency room for epigastric discomfort.  At that time, Van Blarcom reported his work as firewood processing, and he reported that he had recently obtained a heavy truck license.  He was found to have cholelithiasis.  Van Blarcom underwent a laparoscopic cholecystectomy in July of 2005.  He was readmitted to the hospital a week later for abdominal pain, which was resolved.

   Van Blarcom saw Dr. Dubrule in August of 2005 for right-sided weakness.  Dr. Dubrule in his discharge notes wrote that the weakness was resolved and was possibly due to vasospasm caused by cocaine use, hypertension, obesity, and alcohol abuse.  A year later, in July of 2006, Dr. Dubrule noted Van Blarcom's left arm deformity.  In August of 2006, Dr. Dubrule noted anxiety disorder, polysubstance abuse, and controlled hypertension.  Dr. Dubrule made the same assessment in July of 2007.

   In May of 2006, Van Blarcom had a consultative psychological examination with Dr. Swinburne.  Van Blarcom reported that he was not receiving any psychiatric care either through medications or counseling.  He said that he was working in his father's logging business and was primarily processing logs into firewood.  Dr. Swinburne diagnosed a depressive disorder, noted Van Blarcom's withered left arm, and indicated a need to rule out polysubstance abuse and bipolar disorder.  Functionally, Dr. Swinburne assessed

Van Blarcom as being able to understand and remember simple and complex instructions, to get along with others, and to maintain reasonable attendance except for a number of times when he would be absent due to depression.  Dr. Swinburne also noted that Van Blarcom was easily distracted, would have a hard time maintaining concentration for more than an hour, and might need closer supervision than other employees.

  Dr. Schneider, a DDS non-examining consultant, completed a Psychiatric Review Technique Form and provided a residual functional capacity assessment of Van Blarcom in May of 2006.  Dr. Schneider reviewed Van Blarcom's records for the period between November 1, 1997, and May 23, 2006.  He diagnosed affective disorder with moderate limitations in activities of daily living, social functioning, and concentration, persistence, and pace with no episodes of decompensation.  Dr. Schneider stated that Van Blarcom could maintain adequate attention for very short and simple instructions and complete a normal work week in an environment that was somewhat socially isolated and without overly critical supervision.  Dr. Klonel diagnosed Van Blarcom with depression in February of 2007.

  A consulting physician, Dr. Windler, conducted an examination of Van Blarcom in June of 2006.  Dr. Windler noted Van Blarcom's obvious deformity in his left arm with resulting

limitations in use.  He also noted that Van Blarcom had a history of chronic low back pain and controlled hypertension.

The state agency non-examining physician, Dr. Fairley, reviewed Van Blarcom's records and completed a form in September of 2006.  Dr. Fairley found that Van Blarcom could lift and carry twenty pounds occasionally and ten pounds frequently, could stand or walk for about six hours, could sit for six hours, and had limited ability to push or pull with his arms.  Dr. Fairley noted the atrophied condition of Van Blarcom's left arm and that Van Blarcom could use that arm in only a "supportive role."  He found that Van Blarcom was limited to engaging in postural activities only occasionally and that he could never climb ladders, rope, or scaffolds.  He also noted limitations for the left arm in reaching, handling, and fingering and that Van Blarcom should avoid heights.

A state agency vocational specialist completed an assessment of Van Blarcom's ability to work in September of 2006.  The vocational specialist concluded that Van Blarcom could not return to his former work as a gas station attendant and also noted that the Dictionary of Occupational Titles rated gas station attendant work at a medium exertional level with a "Specific Vocational Preparation" level of 3.  The vocational specialist found that

Van Blarcom could potentially work as a toll collector, storage facility rental clerk, and photograph finisher.

Van Blarcom's treating physician, Dr. Dubrule, completed a physical residual functional capacity assessment form in August of 2007.  Dr. Dubrule found that Van Blarcom could lift twenty pounds occasionally, could stand or walk for less than two hours during a work day, would need to periodically alternate between sitting and standing, and was limited in his ability to push or pull with his arms.  Dr. Dubrule noted the condition of Van Blarcom's left arm and explained that because of his left arm, Van Blarcom overused his right arm which caused chronic back pain.  Dr. Dubrule also wrote that all postural activities were limited to occasionally except that he could never climb and that some manipulative activities were limited to occasionally because of Van Blarcom's left arm and hand.  She also wrote that Van Blarcom's back pain limited his attention and concentration.

Dr. Dubrule completed a mental residual functional capacity assessment form at the same time.  She found that Van Blarcom was markedly limited in his ability to understand and remember detailed instructions, maintain attention and concentration, maintain regular attendance, and sustain a routine without special supervision.  Dr. Dubrule also wrote that Van Blarcom experienced chronic anxiety related to the deformity of his left

arm which made it difficult for him to concentrate, to sustain a work schedule, and to react and plan in a work environment.

A hearing was held on Van Blarcom's claims on September 19, 2007. Van Blarcom testified at the hearing. The ALJ issued a decision on October 23, 2007, concluding that Van Blarcom was not disabled. Review by the Appeals Council was denied on May 27, 2010, and Van Blarcom sought review by this court.

## Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[1]  20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).  The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled.  20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  The applicant bears the burden, through the first four steps, of proving that her impairments preclude her from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the burden shifts to the Commissioner to show that work that the claimant can do, despite her impairments, exists in significant numbers in the national economy.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## Discussion

Van Blarcom contends that the Commissioner's decision denying his application for benefits must be reversed because the ALJ did not properly consider and explain the record evidence in making his residual functional capacity assessment and because the finding that Van Blarcom can work as a gas station attendant

---

[1] The regulations implementing Title II and Title XVI are the same for purposes of most of the issues in this case.  See Barnhart v. Thomas, 540 U.S. 20, 25 (2003); Sullivan v. Zebley, 493 U.S. 521, 525 n.3 (1990).  The contrary issue pertains to the last insured date which is addressed separately.

is not supported by substantial evidence. The Commissioner contends that the decision must be affirmed because substantial evidence supports the ALJ's finding that Van Blarcom was not disabled for purposes of Title II and Title XVI benefits.

A. <u>Last Insured Date</u>

In denying Van Blarcom's application for benefits, the ALJ did not distinguish between his claims for Title II and Title XVI benefits. The Commissioner, however, addresses the claims separately and argues that substantial evidence supports a ruling that Van Blarcom was not disabled for purposes of his claim for Title II benefits. Although the ALJ noted a lack of medical evidence to support Van Blarcom's claims before 2005, the ALJ did not specifically address the issue the Commissioner now raises.[2] Even if the Commissioner's new argument in support of the ALJ's ruling were appropriately considered for judicial review, it would appear to lack merit.[3]

---

[2] The court will not consider the Commissioner's post hoc rationalizations for the ALJ's decision because the decision must be reviewed based on the reasons articulated therein. <u>See, e.g.</u>, <u>Massachusetts v. Sibelius</u>, --- F.3d ---, 2011 WL 834068, at *6 (1st Cir. March 11, 2011); <u>Bard v. Boston Shipping Assoc.</u>, 471 F.3d 229, 244 (Dec. 19, 2006); <u>High v. Atrue</u>, 2011 WL 941572, at *6 (D.N.H. March 17, 2011).

[3] The Commissioner argues that the medical evidence within the pertinent period does not support a finding that Van Blarcom

B.  Residual Functional Capacity Assessment

At Step Four of the sequential analysis, "the ALJ will assess and make a finding about ["the applicant's] residual functional capacity based on all the relevant medical and other evidence in [the] case record."  20 C.F.R. § 404.1520(e).  The residual functional capacity assessment is then used at Steps Four and Five to determine whether there is work the applicant can do.  Id.  An applicant's residual functional capacity "is the most [he] can still do despite [his] limitations."  § 404.1545(a)(1).  In making that assessment, the ALJ "will consider all of [the applicant's] medically determinable impairments of which [the ALJ is] aware, including [the applicant's] medically determinable impairments that are not 'severe,' as explained in [sections] 404.1520(d), 404.1521, and 404.1523 . . . ."  § 404.1545(a)(2).

In this case, the ALJ found that Van Blarcom had severe impairments of depression, chronic left arm atrophy, chronic lower back strain, and hypertension.  Despite those impairments, the ALJ found that Van Blarcom retained the residual functional capacity to do a full range of light work except that he would be

---

was disabled.  Given the severity of Van Blarcom's depression during at least part of the time and the limitations imposed by his atrophied left arm, the Commissioner's review of the evidence is not persuasive.

limited to unskilled, entry-level work without complex or detailed instructions. The ALJ found no postural limitations and no limitations on manual dexterity.

As defined in the regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b), § 404.967(b). Light work also requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." Id. In addition, light work includes the ability to do sedentary work unless there are limitations on the ability to sit for long periods of time or on manual dexterity. Id.

As Van Blarcom points out, the opinions provided by his treating physician, a state agency consultative examining physician, a state agency vocational specialist, and a state agency reviewing physician noted the condition of his left arm and assessed limitations caused by that condition. The ALJ acknowledged some of the limitations found in the medical opinions but failed to explain why he did not include those limitations in his residual functional capacity assessment. With respect to depression, the ALJ noted the limitations found by the consultative examining psychologist, noted a conflict with the opinions of the non-examining state consultant, and discounted

the opinions of the non-examining psychologist based on the conflict.  The ALJ failed to explain why the examining psychologist's opinions were not included in the residual functional capacity assessment.  The ALJ's failure to follow the required analysis in this case was error.[4]

C.  Finding as to Disability at Step Four

The ALJ concluded at Step Four that Van Blarcom was not disabled because he could return to the work he had done as a gas station attendant.  Van Blarcom explained that he left that job because of his physical disabilities which caused his back to be sore constantly and caused sore feet.  Evidence exists in the record to support Van Blarcom's explanation that overuse of his right side to compensate for his inability to use his left arm caused back strain and muscle soreness.  The ALJ failed to address Van Blarcom's explanation or the impact of the condition of Van Blarcom's left arm on his ability to work as a gas station attendant.

---

[4] Although the Commissioner attempts to provide the analysis of the medical opinions that is lacking in the ALJ's decision, the court will not consider post hoc justifications for the ALJ's action.  See, e.g., Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

Therefore, the ALJ's determination that Van Blarcom was capable of a full range of light work and, based on that assessment, could return to his former job as a gas station attendant is not supported by substantial evidence in the record.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion to reverse the Commissioner's decision (document no. 10) is granted.  The Commissioner's motion to affirm (document no. 13) is denied.

The decision is reversed and the case is remanded under Sentence Four of § 405(g).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 25, 2011

cc:  Karen B. Fitzmaurice, Esquire
     Francis M. Jackson, Esquire
     T. David Plourde, Esquire